# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2716 | **DATE** | 7/22/2003 |
| **CASE TITLE** | Amwest Surety Insurance Company vs. Frank Szabo, Jr., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Amwest's motion to enter final judgment and set damages [78-1] is granted and grants Amwest $2,178,504 in damages (such amount to be reduced by any amount recovered by Amwest that is currently held by the government dues to SCSI's liens).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 23 200 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | 7/22/2003 date mailed notice | |
| IS | courtroom deputy's initials | 03 JUL 22 PM 4:19 Date/time received in central Clerk's Office | IS mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMWEST SURETY INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 00 C 2716<br>) |
| v. | ) Magistrate Judge<br>) Martin C. Ashman |
| FRANK SZABO, JR. and SZABO CONSTRUCTION SERVICES, INC., | )<br>)<br>) |
| Defendants. | ) |

DOCKETED

JUL 2 3 2003

## MEMORANDUM OPINION AND ORDER

Amwest Surety Insurance Company filed suit against Frank Szabo and Szabo Construction Services, Inc. ("SCSI") to recover funds and collect collateral pursuant to a General Indemnity Agreement and the Agreement/Loan/Trust Account (Execution Agreement) for expenses it incurred and for protection against expenses it might incur as a result of issuing surety bonds for Szabo Contracting, Inc.

On October 11, 2001, this Court granted Amwest's motion for summary judgment as to Szabo's individual liability under the Indemnity Agreement and ruled that the Execution Agreement was enforceable against both Szabo and SCSI. *Amwest Surety Ins. Co. v. Szabo*, No. 00 C 2716, 2001 WL 1230643, at *4-5 (N.D. Ill. Oct. 11, 2001). On July 15, 2002, this Court granted Amwest's motion for summary judgment regarding SCSI's agreement to indemnify Amwest in accordance with the Indemnity Agreement, which SCSI agreed to sign by signing the Execution Agreement. *Amwest Surety Ins. Co. v. Szabo*, No. 00 C 2716, 2002 WL 1559688, at *4-5 (N.D. Ill. July 16, 2001). Amwest now moves for final judgment against SCSI and requests

this Court to award damages in the amount of $2,178,504 for losses incurred by Amwest in connection with the completion of the bonded projects.[1]

## I. **Background**

Amwest, a company incorporated in Nebraska, provides surety bonds to contractors and other companies. In 1999, Amwest issued surety bonds on behalf of Szabo Contracting, an Illinois corporation, to secure Szabo Contracting's obligation to perform construction work for various public bodies. Szabo Contracting was the principal under the bonds, and the various public bodies funding the construction work were the obligees. In consideration of the issuance of the bonds by Amwest, Szabo Contracting and Amwest entered into an Indemnity Agreement on April 6, 1999.

In October 1999, the weight of Szabo Contracting's debts became too much for it to bear, and, as a result, Szabo Contracting made an assignment for the benefit of creditors. By reason of that assignment, and because of its financial condition, Szabo Contracting advised Amwest and the other concerned parties that Szabo Contracting would be unable to perform its obligations under the construction contracts, thereby placing Szabo Contracting in default of those obligations. On December 20, 1999, an involuntary bankruptcy proceeding was initiated against Szabo Contracting, and an order of relief was entered by the bankruptcy court on January 14, 2000.

Around the time of the October 1999 assignment, Szabo formed SCSI. As president of this new entity, Szabo proposed to Amwest that SCSI complete the construction work started by

---

[1] The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. See 28 U.S.C. § 636(c); Local R. 73.1(b).

Szabo Contracting. Discussions led to Amwest accepting Szabo's proposition and to the signing of an Execution Agreement[2] by Szabo, SCSI, and Amwest. The Execution Agreement, dated October 15, 1999, stated that Szabo, as president of SCSI and in his individual capacity, acknowledge and affirmed the obligations undertaken by him and Szabo Contracting pursuant to the Indemnity Agreement. The Execution Agreement also declared that by executing the Execution Agreement, Szabo and SCSI each agreed to "execute any and all documents necessary to secure Amwest for all loss and expense it may incur in completion of the contracts using [SCSI], and for all monies paid to third parties as well as [SCSI] in connection with the completion of the projects." (Pl.'s Rule 56.1 Statement of Material Uncontested Facts, Ex. F at 2.)

This new endeavor was short-lived. SCSI commenced performance on the construction projects, but its forces were soon demobilized amidst disputes with Amwest over billing and payment under a separate contract. Before demobilizing, however, SCSI asserted liens against public funds for three of the bonded projects. Amwest again found itself in the position of arranging for the completion of the construction contracts.

Amwest determined that it would need to expend more funds than it was to receive from the government bodies (obligees) to complete the construction contracts. Therefore, around April 2000, Amwest made demand of Szabo and SCSI under the Indemnity Agreement and Execution Agreement to pay Amwest the amounts it had incurred in losses thus far and to post collateral to protect Amwest against potential claims. Both Szabo and SCSI refused to capitulate to the demand, so Amwest filed a complaint in federal court.

---

[2] The Agreement/Loan/Trust Account agreement signed by the parties is referred to as the Execution Agreement.

Amwest's complaint contained three counts: breach of the Indemnity Agreement and Execution Agreement, specific performance of the collateral posting provision of the Indemnity Agreement, and breach of a separate contract that required SCSI to complete the remaining construction work at IDOT Force Account rates. The complaint sought pecuniary damages, the posting of collateral, and the release of liens. Amwest moved this Court for summary judgment as to liability on all three counts of the complaint.

On October 11, 2001, this Court issued a Memorandum Opinion and Order granting in part and denying in part Amwest's motion for summary judgment. This Court refused to grant summary judgment on counts two and three of Amwest's complaint, because neither count had been adequately addressed and argued by Amwest in its briefs. *Amwest Surety Ins. Co.*, 2001 WL 1230643, at *8. With regard to count one, this Court ruled that the Execution Agreement was enforceable against both Szabo and SCSI, and that Szabo was individually liable under the Indemnity Agreement. *Id.* at *4-5. This Court rejected Amwest's argument that SCSI was a successor or joint venture of Szabo Contracting. *Id.* at *5-6.

This Court did not determine the nature of what SCSI's and Szabo's obligations were under the Execution Agreement. The Execution Agreement made no immediate demands of Szabo or SCSI, but the agreement did require Szabo and SCSI to "execute any and all documents necessary to secure Amwest for all loss and expense it may incur in completion of the contracts using [SCSI], and for all monies paid to third parties as well as [SCSI] in connection with the completion of the projects." (Pl.'s Rule 56.1 Statement of Material Uncontested Facts, Ex. F at 2.) In a footnote, this Court made clear that "nothing in this decision should be construed as a

finding as to the scope or enforceability of this obligation." *Amwest Surety Ins. Co.*, 2001 WL 1230643, at *5 n.5.

Following the October 11, 2001 decision, Amwest began to demand that SCSI execute documents necessary to secure Amwest for the loss and expense it incurred in completing the construction projects. Around October 15, 2001, Amwest asked SCSI to sign a General Indemnity Agreement ("GIA"). (Pl.'s Rule 56.1 Statement of Material Uncontested Facts, Ex. G at 9.) SCSI refused. On October 31, 2001, Amwest again asked SCSI to sign the GIA, and also requested that SCSI sign an Assignment Agreement. The Assignment Agreement would have transferred to Amwest all of SCSI's rights to the liens against the public funds. (Pl.'s Rule 56.1 Statement of Material Uncontested Facts, Ex. G at 10.) Around November 12, 2001, SCSI refused to sign both the GIA and the Assignment Agreement. Shortly thereafter, Amwest filed a motion for summary judgement, in which Amwest asked this Court to enforce the Execution Agreement against SCSI by requiring SCSI to sign the GIA and Assignment Agreement.

On July 15, 2002, this Court issued a Memorandum Opinion and Order granting Amwest's motion for summary judgment. This Court ruled that SCSI's obligation to secure Amwest for all loss and expense it may incur in completion of the contracts using [SCSI], and for all monies paid to third parties as well as [SCSI] in connection with the completion of the projects is definite and certain, and thus enforceable. *Amwest Surety Ins. Co. v. Szabo*, 2002 WL 1559688, at *6 (N.D. Ill., Jul 16, 2002). This Court further ruled that SCSI's agreement to secure Amwest is properly read as an agreement to indemnify Amwest. *Id.* Consequently, Amwest filed the instant Motion to Enter Final Judgment and Set Damages, which this Court treated as a

motion for summary judgment. In its motion, Amwest requests this Court to enter final judgment in its favor and against SCSI in the amount of $2,178,504.

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is a fact that may affect the outcome of a claim under the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue as to a material fact exists if, construing all of the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999); *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905 (7th Cir. 1990).

### B. Duty of Good Faith and Fair Dealing

The duty of good faith and fair dealing is implied in every contract, under Illinois law. *Teachers Ins. & Annuity Ass'n of Am. v. LaSalle Nat'l Bank*, 691 N.E.2d 881, 890 (Ill. App. Ct. 1998). Amwest argues that it acted in good faith when it refused to pay SCSI for work Amwest believed was not yet completed by SCSI on the bonded projects or not invoiced in accordance with IDOT rates. Specifically, Amwest argues that Paragraphs 1 and 12 of the Execution

Agreement grant it a contractual right to refuse payment, if Amwest believes doing so is in its best interest. We agree. Paragraph 1[3] and 12[4] of the Execution Agreement explicitly grant Amwest sole discretion to refuse payment to SCSI, if Amwest believes a discrepancy exists between its records and the amount invoiced by SCSI. Because this Court has previously ruled that SCSI is bound by the Execution Agreement, the paragraphs included therein are valid and enforceable.

SCSI argues that Amwest breached the duty of good faith and fair dealing by refusing to pay SCSI for the work it performed and that this breach of the Execution Agreement means that Amwest cannot enforce that Agreement's indemnity provision against SCSI. In support of SCSI's argument that Amwest breached its duty of good faith and fair dealing, SCSI relies on *Continental Mobile Telephone Co. v. Chicago SMSA L.P.*, 587 N.E.2d 1169 (Ill. App. Ct. 1992). In *Continental Mobile Telephone Co.*, the parties entered into an agreement which allowed the plaintiff to purchase cellular telephone services from the defendant at wholesale prices, and in turn sell those same services to retail customers. *Id.* at 1171. A dispute arose when the defendant raised its wholesale rates. The plaintiff brought suit, arguing in part that the defendant breached the duty of good faith and fair dealing implied in the agreement by raising its rates. The

---

[3] Paragraph 1 states as follows: "In the event Amwest agrees to fund the Trust Account, provide financial assistance to the principal in any manner or method, or make any payments other than those payments for which Amwest has specifically agreed to make pursuant to the terms of this Agreement, said action shall be in the sole judgment, option and discretion of Amwest and in the best interest of Amwest and not [SCSI], Frank Szabo or the indemnitors."

[4] Paragraph 12 states as follows: "It is expressly understood by [SCSI] and Frank Szabo that should Amwest or its representatives disapprove of any payments or refuse to sign or send a check from the Trust Account, such decision is final and no one shall have a right or cause of action of any kind or nature against Amwest, its agents, employees, attorneys or representatives as a result of such disapproval."

Illinois Appellate Court stated "[g]ood faith between contracting parties requires that a party vested with contractual discretion must exercise that discretion reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties." *Id.* at 1174. However, the court pointed to an express contract provision allowing the defendant the right to raise its rates at its discretion, and explained that "both parties were aware that defendant was able to raise its wholesale rates at any time, thereby negating any inference that defendant's actions were outside the contemplation of the parties and could be characterized as a breach of good faith." *Id.*

In this case, SCSI vehemently argues that the reasonable expectation of the parties was that SCSI would get paid for work it performed on the bonded projects and Amwest breached its duty of good faith by refusing to pay. However, Amwest and SCSI were both aware that Amwest had discretion to refuse payment in accordance with the provisions in the Execution Agreement, and SCSI has submitted no evidence that would indicate Amwest abused that discretion, only that the parties disagreed over the amount owed.

In any event, the implied duty of good faith does not modify contractual provisions which plainly define the duties of the parties. *LaSalle Nat'l Bank v. Metro. Life Ins. Co.*, 1993 WL 191803, at *3 (N.D. Ill. June 4, 1993), *aff'd*, 18 F.3d 1371 (7th Cir. 1994). Consequently, SCSI has failed to prove a genuine issue of fact for trial concerning Amwest's actions. In sum, we hold that Amwest did not breach its duty of good faith and fair dealing.

## C. Prima Facie Evidence of Liability

Amwest submitted an affidavit by Clark Cameron, president of Horizon Business Resources (the company assisting the state of Nebraska with the liquidation of Amwest), and a bond activity ledger, as prima facie evidence of SCSI's liability. (Pl.'s Rule 56.1 Statement of Material Uncontested Facts, Ex. J.) Mr. Cameron determined that Amwest incurred $2,178,504 in un-reimbursed losses and expenses expended in resolving claims asserted against the bonded projects. Amwest argues that, according to Paragraph 2(D) of the Indemnity Agreement, Mr. Cameron's affidavit, the bond activity ledger, and cancelled checks and invoices it also provided are prima facie evidence of SCSI's liability to Amwest. Paragraph 2(D) states:

> In any claim or suit hereunder, an itemized statement of the aforesaid losses and expenses, sworn to by an officer of Surety, or the vouchers or other evidence of disbursement by Surety; shall be prima facie evidence of the fact and extent of the liability hereunder of the Undersigned.

In support of its argument Amwest relies on *U.S. Fidelity and Guaranty Co. v. Klein Corp.*, 558 N.E.2d 1047 (Ill. App. Ct. 1990). In *U.S. Fidelity and Guaranty Co.*, the Illinois Appellate Court affirmed the trial court's decision to grant the surety's motion for summary judgment against an indemnitor. The motion was accompanied by an affidavit and photocopies of the checks representing payments made by the surety. *Id.* at 1049. The court found that the affidavit and checks were sufficient to determine the amount of the surety's damages. The court referred to a provision located within the master agreement stating that vouchers or other evidence of payment may be used to assess the extent of the indemnitor's liability to the surety. *Id.* at 1052. Furthermore, the indemnitor did not provide any counteraffidavits or other evidence which would effectively rebut the surety's prima facie evidence. *Id.*

In contrast, SCSI argues that, according to Paragraph 2(D), Mr. Cameron's affidavit is insufficient evidence of Amwest's loss. SCSI argues that Mr. Cameron's affidavit is not valid, because it is a summary of the total claimed loss per project and not an itemized statement of the losses and expenses claimed by Amwest. We disagree with SCSI's narrow interpretation of the provision.

SCSI did not consider the other provision contained within Paragraph 2(D) that qualifies Mr. Cameron's affidavit and the bond activity ledger as prima facie evidence. Specifically, the provision states that "the vouchers or other evidence of disbursement by Surety[] shall be prima facie evidence . . . of the liability of [SCSI]." Even if the ledger is not an itemized statement it still qualifies as "other evidence of disbursement," especially as supported by copies of checks, invoices, and payment worksheets.

Furthermore, Rule 56(e) of the Federal Rules Civil Procedure "requires the non-moving party to go beyond the pleadings and by [its] own affidavits, or by the deposition, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rule 56(e) states that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). SCSI has not offered any factual or legal support to refute Mr. Cameron's affidavit or the bond activity ledger, and thus failed to prove a genuine issue of fact for trial. *See cf. U.S. Fidelity and Guar. Co. v. Klein Corp.*, 558 N.E.2d 1047 (Ill. App. Ct. 1990) (requiring defendant to provide counteraffidavit or documentary evidence to defeat plaintiff's motion for summary judgment,

under Illinois law). In sum, we hold that pursuant to Paragraph 2(D) of the Indemnity Agreement and pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, Amwest has presented sufficient evidence to determine the amount of Amwest's losses and expenses incurred in the completion of the bonded projects.

### III. Conclusion

This Court finds that SCSI failed to create an issue of material fact regarding Amwest's decision not to pay SCSI for work Amwest believed was improperly invoiced. This Court also finds that Amwest's submission of Mr. Cameron's affidavit and the bond activity ledger as unrebutted prima facie evidence is sufficient to determine Amwest's losses and expenses. Accordingly, this Court grants Amwest's motion to enter final judgment and set damages and grants Amwest $2,178,504 in damages (such amount to be reduced by any amount recovered by Amwest that is currently held by the government dues to SCSI's liens).

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: July 22, 2003.

Copies have been mailed to:

| | |
|---|---|
| JAMES M. DASH, Esq. | T. SCOTT LEO, Esq. |
| LORNE T. SAEKS, Esq. | JOHN E. SEBASTIAN, Esq. |
| Much Shelist Freed Denenberg | Leo & Weber, P.C. |
|   Ament & Rubenstein, P.C. | One North LaSalle Street |
| 191 North Wacker Drive | Suite 3600 |
| Suite 1800 | Chicago, IL 60602 |
| Chicago, IL 60606 | |
| | |
| Attorneys for Plaintiff | Attorneys for Defendants |